FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUL 23 2007

JAMES N. HATTEN, Clerk
By: *[signature]* Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IBEW LOCAL 613 DEFINED )
CONTRIBUTION PENSION FUND; IBEW )
LOCAL 613 FAMILY HEALTH FUND; and )
GENE O'KELLEY and MILTON )
CLOWERS, as trustees of the aforesaid )
funds, )
   ) Civil Action
   Plaintiffs, ) No: _____
   )
v. ) **1:07-CV-1704**
   )
ROME ELECTRICAL SYSTEMS, INC. ) **WSD**
   )
   Defendant. )
   )

## COMPLAINT

COME NOW Plaintiffs and file this Complaint against Defendant Rome Electrical Systems, Inc. ("Defendant") and allege the following:

### Parties

1.

The IBEW Local 613 Defined Contribution Pension Fund (the "Pension Fund") and the IBEW Local 613 Family Health Fund (the "Family Health Fund")(collectively, the "Funds") are employee benefit plans within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended

("ERISA"), 29 U.S.C. §1002 (3). Pursuant to ERISA §502 (d)(1), 29 U.S.C. § 1132 (d)(1) the Funds have capacity and standing to bring this lawsuit.

2.

Gene O'Kelley and Milton Clowers are trustees of the Funds. The trustees of the Funds exercise discretionary authority and control with respect to the management of, and with respect to the management and disposition of the assets of, each of those Funds. Accordingly, the trustees are "fiduciaries" within the meaning of ERISA § 3(21), 29 U.S.C § 1002(21). The trustees bring this suit on behalf of those Funds, and on behalf of those Funds' participants and beneficiaries, and not in any individual capacity.

3.

Defendant is a corporation organized and existing under the laws of the State of Georgia. Defendant conducts business within the Northern District of Georgia and is subject to the jurisdiction of this Court. Plaintiffs' Summons and Complaint may be served upon the registered agent of Defendant, Mark J. Webb at 615 West 1st Street, Rome, Georgia 30161.

4.

Defendant is an "employer" within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and Section 2(2) of the National Labor Relations Act of 1935, as amended ("NLRA"), 29 U.S.C. § 152(2).

## Venue and Jurisdiction

5.

This Court has subject matter jurisdiction over this action pursuant to ERISA §§ 502(e)(1) and (f), 29 U.S.C. §§ 1132(e)(1) and (f), and 28 U.S.C. §§ 1331 and 1337.

6.

Venue of this action is proper in the Northern District of Georgia under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391 with respect to all claims asserted by Plaintiffs because the Funds are administered in the Northern District of Georgia.

7.

Pursuant to ERISA § 502(h), 29 U.S.C. § 1132(h), Plaintiffs will serve file-stamped copies of this Complaint in this matter upon the Secretary of Labor and the Secretary of the Treasury by certified mail.

## Factual Allegations

8.

Defendant and IBEW Local No. 613 ("IBEW") have had a collective-bargaining relationship for Defendant's electricians since 1989 when Defendant signed IBEW's Letter of Assent-A. That Letter of Assent-A authorized the Atlanta Chapter of the National Electrical Contractor Association (the "AECA") to be Defendant's "collective-bargaining representative for all matters contained in or pertaining to the current and any subsequently approved contract between [the AECA] and [IBEW]."

9.

Pursuant to that collective-bargaining relationship, Defendant has remained covered by a series of successive area collective-bargaining agreements that the AECA negotiated with IBEW on behalf of its signatory employer members.

## The First Action Seeking Unpaid Contributions

10.

Pursuant to the Article VI of the collective bargaining agreement between IBEW and the AECA effective from September 1, 2000 to August 31, 2003 ("CBA 2000-03"), to which Defendant assented, Defendant agreed to make certain contributions to the Funds.

11.

On or about July 8, 2004, the Funds and certain trustees of the Funds filed an action in this Court against Defendant seeking certain contributions which Defendant was required to make pursuant to CBA 2000-03, Case No. 1:04-CV-1999-TWT ("First Action").

12.

In May 2006, Defendant and the Funds settled the First Action regarding the unpaid contributions by Defendant. The Settlement Agreement included a release in which the Funds released all claims against Defendant "arising or existing through August 31, 2003." The Funds and their trustees did not release any claim against Defendant arising after August 31, 2003.

13.

Pursuant to the Settlement Agreement, the parties to First Action filed a Stipulation of Dismissal whereby the Funds and certain of their trustees dismissed with prejudice claims asserted in the action against Defendant which arose or existed through August 31, 2003. The Stipulation of Dismissal specifically stated that any claims arising or existing after August 31, 2003 were dismissed without prejudice.

## Contributions for the Time Period
## September 1, 2003-August 31, 2004

14.

AECA negotiated a one-year extension to the CBA 2000-03 with IBEW (the "Extension") which was effective September 1, 2003 through August 31, 2004.

15.

Pursuant to Article VI of the Extension, to which Defendant assented, Defendant became liable to each of the Funds for fringe benefit contributions due and owing each of them.

16.

Pursuant to Article VI of the Extension, Defendant was required to submit to the Funds by the fifteenth (15th) day of each month reports showing the contributions due and owing the respective Funds for work performed during the previous month by Defendant's employees covered by the Extension. Defendant also was required to remit to the Funds all contributions due and owing the respective Funds for any given month by the fifteenth (15th) day of the following month.

17.

Though Defendant made certain contributions for the time period covered by the Extension, Plaintiffs are unable to determine if all required contributions were made in a timely manner. Without inspecting and conducting an audit of the

Defendant's payroll records, Plaintiffs are unable to determine the amount of contributions, interest, or liquidated damages Defendant owes the Funds for this time period.

## The NLRB Decision

18.

In May 2004, Defendant attempted to send notice to IBEW and the AECA that it was terminating its affiliation with IBEW and withdrawing from the AECA. Subsequently, the AECA notified Defendant that the notice was untimely and that Defendant's notice to the IBEW and AECA was not effective.

19.

During this same time period, the AECA and IBEW signed a three-year area collective-bargaining agreement for the time period September 1, 2004 through August 31, 2007 ("CBA 2004-07").

20.

Maintaining that its notice to IBEW and the AECA was timely, Defendant did not comply with the terms of the CBA 2004-07 and unilaterally altered the union employees' terms of employment, including discontinuing all contributions to the Funds.

21.

In March 2005, the National Labor Relations Board ("NLRB") filed a complaint against Defendant alleging that Defendant violated certain sections of the National Labor Relations Act by, among other things, not abiding by the terms of the CBA 2004-07.

22.

On April 12, 2007, the NLRB issued its final decision in which the NLRB found that Defendant was bound by the CBA 2004-07 and its terms. A copy of the NLRB decision is attached hereto as Exhibit A. Specifically, regarding the Funds, the NLRB decision required Defendant to make whole all benefit funds for any losses suffered as a result of Defendant's unlawful failure to adhere to the agreements the AECA was authorized to negotiate on Defendant's behalf, which included the CBA 2004-07. The NLRB stated further that Defendant was required to "make all required benefit fund payments or contributions, if any, that have not been made since about August 31, 2004."

**Unpaid Contributions for the Time Period September 1, 2004-August 31, 2007**

23.

The CBA 2004-07, to which Defendant assented (as expressly found by the NLRB) is effective September 1, 2004 through August 31, 2007.

24.

Pursuant to Article VI of the CBA 2004-07, Defendant is liable to each of the Funds for fringe benefit contributions due and owing each of them.

25.

Pursuant to Article VI of the CBA 2004-07, Defendant was required to submit to the Funds by the fifteenth (15th) day of each month reports showing the contributions due and owing the respective Funds for work performed during the previous month by Defendant's employees covered by the CBA 2004-07. Defendant also was required to remit to the Funds all contributions due and owing the respective Funds for any given month by the fifteenth (15th) day of the following month. Defendant defaulted on its duty to submit the monthly reports and to remit contributions by failing to submit all monthly reports and failing to pay all contributions owed to the Funds from October 1, 2004 through the present.

26.

Defendant is liable to the Funds for all unpaid contributions, plus interest, liquidated damages, and attorneys fees related to that nonpayment.

## Right to Inspect and Audit
## Defendant's Payroll Records

27.

By assenting to the Extension and the CBA 2004-07, Defendant agreed to be bound by the trust documents governing the Funds. Pursuant to the trust documents, the Funds have a right to inspect and audit, at the expense of the Funds, the payroll records of Defendant, at Defendant's place of business, to the extent necessary to determine the amount of contributions required to be made to the Funds and the amount of any underpayment, and in the event an underpayment is found to exist, to charge Defendant all or a portion of the expense of the audit.

28.

Though Defendant submitted monthly reports and contributions during the time period in which the Extension was in effect, Plaintiffs are unable to determine if the monthly reports were accurate and/or if Defendant made all required contributions for that time period in a timely manner.

29.

As Defendant has failed to submit any monthly reports for the time period October, 2004 through the present, Defendant is unable to determine the amount of unpaid contributions, interest, and liquidated damages which Defendant currently owes the Funds.

30.

To determine the full amount of contributions, liquidated damages, and interest owing to each of the Funds, the Funds must inspect and audit the payroll records of Defendant.

### Count I - Equitable Relief for Audit/Accounting

31.

Plaintiffs incorporate herein by reference Paragraphs 1-30 of this Complaint.

32.

As outlined herein, Defendant has breached its duties and obligations to the Funds under ERISA § 515, 29 U.S.C. § 1145, and under the Extension and the CBA 2004-07.

33.

Pursuant to ERISA § 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E), the Funds are entitled to equitable relief as the court deems appropriate.

34.

Without an audit of Defendant's payroll records, the Funds will not be able to determine the total amount of unpaid contributions, interest, and liquidated damages that Defendant owes the Funds.

35.

In order to protect their interests and the interests of their beneficiaries and participants, the Funds require equitable relief.

36.

Defendant is required pursuant to the trust documents governing the Funds to permit the Funds to inspect and audit the payroll records of Defendant, at Defendant's place of business, to the extent necessary to determine the amount of contributions, interest, and liquidated damages owed to the Funds by the Defendant.

## Count II - Action for Unpaid Contributions

37.

Plaintiffs incorporate herein by reference Paragraphs 1-36 of this Complaint.

38.

As outlined herein, Defendant has breached its duties and obligations to the Funds under ERISA § 515, 29 U.S.C. § 1145, and under the Extension and the CBA 2004-07.

39.

Pursuant to ERISA § 502(g)(2)(A), 29 U.S.C. § 1132(g)(2)(A), the Funds are entitled to recover from Defendant all unpaid contributions due and owing them.

40.

Pursuant to ERISA § 502(g)(2)(B) 4029 U.S.C. § 1132(g)(2)(B), the Funds are entitled to recover from Defendant interest, in accordance with ERISA § 502(g)(2), on all untimely paid contributions.

41.

Pursuant to ERISA § 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(C), the Funds also are entitled to recover an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for by the Funds' plans in an amount not in excess of 20% of the untimely paid contributions.

42.

Pursuant to ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), the Funds are entitled to recover their expenses of this action, including their attorneys' fees.

\* \* \* \*

WHEREFORE, Plaintiffs pray that this Court grant relief as follows:

(a) Enter judgment against Defendant for all unpaid contributions due and owing to the Funds;

(b) Enter judgment against Defendant for interest, in accordance with ERISA § 502(g)(2), on all unpaid contributions;

(c) Enter judgment against Defendant for liquidated damages on all unpaid contributions;

(d) Award Plaintiffs the expenses incurred in this action, including their attorneys' fees;

(e) Equitable relief ordering Defendant to permit the Funds to inspect and audit the payroll records of Defendant, at Defendant's place of business, to the extent necessary to determine the amount of contributions Defendant owes to each of the Funds; and

(f) Grant Plaintiffs such other relief as this Court deems appropriate.

This 23rd day of July, 2007.

Respectfully submitted,

Parker Hudson Rainer & Dobbs LLP

*Julie Wood*

G. Wayne Hillis, Jr.
Georgia Bar No. 354090
Julie A. Wood
Georgia Bar No. 023749
Tyler J. Voboril
Georgia Bar No. 142361

1500 Marquis II Tower
285 Peachtree Center Avenue
Atlanta, Georgia 30303
(404) 523-5300
(404) 522-8409 Facsimile
Email: tjvoboril@phrd.com
jwood@phrd.com

Attorneys for Plaintiffs

- 14 -